No. 22-5738

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

_____

NICHOLAS SANDMANN,

*Plaintiff-Appellant*

v.

GANNETT CO., INC., ET AL.

*Defendants-Appellees*

_____

On Appeal from the United States District Court
for the Eastern District of Kentucky
Case No. 2:20-cv-00026

_____

**SUPPLEMENTAL BRIEF OF APPELLEES GANNETT CO. INC.
AND GANNETT SATELLITE INFORMATION NETWORK, LLC**

_____

Michael J. Grygiel
Cynthia E. Neidl
Kelly L. McNamee
Candra M. Connelly
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
(518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

Jon L. Fleischaker
Michael P. Abate
William R. Adams
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
(502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com
radams@kaplanjohnsonlaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION AND STATEMENT OF THE CASE ........................................ 1

STATEMENT OF ISSUES ON APPEAL ............................................................ 3

ARGUMENT .................................................................................................. 3

I.  The District Court Correctly Determined that the Blocking Statements
    Contained in the Gannett Publications are Constitutionally Protected Opinion. . 3

    A.  The Full Context of Their Publication Establishes that the "Blocking
        Statements" Are Nonactionable Opinion. ........................................ 3

    B.  Speculation Over State of Mind is Intrinsically Unsuitable as a Foundation
        For Libel. ...................................................................................... 6

II.  Plaintiff's Law of the Case Argument is Irrelevant to his Claims Against
     Gannett. .......................................................................................... 8

III. The Blocking Statements are Not Defamatory ...................................... 9

CONCLUSION ............................................................................................ 17

CERTIFICATE OF SERVICE ....................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Biber v. Duplicator Sales & Serv., Inc.*,
 155 S.W.3d 732 (Ky. Ct. App. 2004) ................................................................3

*Croce v. Sanders*,
 843 Fed. App'x 710 (6th Cir. 2021) .............................................................5, 9

*Cromity v. Meiners*,
 494 S.W.3d 499 (Ky. Ct. App. 2015) ................................................................6

*Digest Publ'g Co. v. Perry Publ'g Co.*,
 284 S.W.2d 832 (Ky. Ct. App. 1955) ..............................................................16

*Haynes v. Alfred A. Knopf, Inc.*,
 8 F.3d 1222 (7th Cir. 1993) ................................................................................6

*Janklow v. Newsweek, Inc.*,
 788 F.2d 1300 (8th Cir. 1986) ............................................................................6

*Kalama v. Matson Navigation Co.*,
 875 F.3d 297 (6th Cir. 2017) ..............................................................................9

*Lassiter v. Lassiter*,
 456 F.Supp.2d 876 (E.D. Ky. 2006) ..................................................................3

*Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*,
 395 F.Supp.2d 541 (W.D. Ky. 2005) ..................................................................4

*McCafferty v. Newsweek Media Group, Ltd.*,
 2019 WL 1078355 (E.D. Pa. Mar. 7, 2019),
 *aff'd*, 955 F.3d 352 (3d Cir. 2020) ....................................................................8

*McCall v. Courier-Journal & Louisville Times Co.*,
 623 S.W.2d 882 (Ky. 1981) ................................................................................9

*McKenzie v. Bellsouth Telecom.*,
 219 F.3d 508 (6th Cir. 2000) ..............................................................................8

*Price v. Viking Penguin, Inc.*,
 881 F.2d 1426 (8th Cir. 1989) ............................................................................7

*Riley v. Harr*,
 292 F.3d 282 (1st Cir. 2002) ..............................................................................4

*Roche v. Home Depot U.S.A.*,
 197 Fed. App'x 395 (6th Cir. 2006) ................................................................16

*Stevens v. Tillman*,
 855 F.2d 394, (7th Cir. 1988) ...............................................................8

*Stringer v. Wal-Mart Stores, Inc.*,
 151 S.W.3d 781, 793 (Ky. 2004) ..........................................................16

*Toler v. Süd-Chemie, Inc.*,
 458 S.W.3d 276 (Ky. 2014) ...................................................................9

*Torain v. Liu*,
 279 Fed. App'x 46 (2d Cir. 2008) ..........................................................8

*Yancey v. Hamilton*,
 786 S.W.2d 854 (Ky. 1990) ....................................................................3

*Yohe v. Nugent*,
 321 F.3d 35 (1st Cir. 2003) .....................................................................6

## Other Authorities

*Leibson*, 13 KENTUCKY PRACTICE (TORT LAW) § 15.2 (1995) ..................................3

Donktum, C., *Covington Catholic School Remix - Won't Back Down*, YouTube
 (Jan. 19. 2019) https://www.youtube.com/watch?v=twrW4uYlN7M ..............15

Nicholas Sandmann, *The corrupt liberal media came for me, just like they came
 for Kyle Rittenhouse, and if he decides to sue I say go for it and hold the media
 accountable*, The Daily Mail (Dec. 16, 2021), https://www.dailymail.co.uk/
 news/article-10208119/kyle-rittenhouse-trial-NICHOLAS-SANDMANN-
 media-defamation.html ......................................................................16

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 6th Circuit Rule 26.1, Defendants-Appellees

Gannett Co., Inc. and Gannett Satellite Information Network, LLC make the

following disclosures:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    Gannett Co., Inc. is a publicly traded company (NYSE: GCI). It has no parent company. Black Rock and Vanguard, Inc. are entities with more than 10% interest in Gannett, Co., Inc.

    Gannett Satellite Information Network, LLC is an indirect, wholly owned subsidiary of Gannett Co., Inc. which is a publicly traded company. Black Rock and Vanguard, Inc. are entities with more than 10% interest in Gannett, Co., Inc.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

    No.

Dated: December 23, 2022             /s/Michael Abate
                                     Counsel for Defendants-Appellees
                                     Gannett Co., Inc. and Gannett
                                     Satellite Information Network, LLC

## INTRODUCTION AND STATEMENT OF THE CASE

Plaintiff-Appellant Nicholas Sandmann's ("Plaintiff" or "Sandmann")

appellate brief quotes only a single allegedly defamatory statement appearing in

any of the Gannett publications[1] he attacks: a quotation from a statement that

Nathan Phillips made to the *Washington Post*. *See* Br. at 8 ("I started going this

way, and that guy in the hat stood in my way . . . He just blocked my way and

wouldn't allow me to retreat." (quoting RE 32-1, PageID.327-345)).[2] These

"Blocking Statements" are the totality of Plaintiff's argument about Gannett's

publications, even though they do not appear in several of the Gannett articles he

disputes.

The trial court correctly concluded that the Blocking Statements (and others

like it) constitute protected opinion because they cannot be proven true or false.

For reasons explained in Appellees' Joint Brief, the district court was free to

---

[1] For the convenience of the Court, this brief uses the term "Gannett publications" to refer to all of the republications of the Blocking Statements challenged by Plaintiff. However, as Gannett noted in both its Motion to Dismiss the Amended Complaint (RE 36, PageID.670) and Answer (RE 44, PageID.795) in the lower court, any republication of the Blocking Statements by the *Detroit Free Press, Nashville Tennessean, Cincinnati Enquirer*, and *Louisville Courier Journal* may not properly be challenged in this case because they are not directly owned, operated, or published by the named Defendants-Appellees and, further, certain of these four community newspapers are not subject to personal jurisdiction in the District Court. Gannett's defenses in this regard were not adjudicated by the District Court, and Gannett expressly reserves its rights to assert these defenses in this case.

[2] The citations in this Supplemental Brief are to Record Entries ("RE") from the case against the Gannett Defendants.

address that issue at summary judgment for all defendants, notwithstanding Sandmann's "law of the case" argument. But that is especially true for Defendants Gannett Co., Inc. and Gannett Satellite Information Network, LLC (collectively, "Gannett"), because they did not raise an opinion defense at the motion to dismiss stage. Thus, it was never decided in *this* case prior to summary judgment.

While the district court's application of the opinion privilege to dismiss the case was correct, affirmance is equally appropriate on other threshold dispositive grounds. Indeed, this is the rare defamation case where the plaintiff's own words and public statements make clear that the Blocking Statements did not convey a defamatory meaning. On the contrary, Sandmann openly embraced his status as the one person who "stood his ground" and refused to make way as Phillips tried to walk through the crowd. From the time the incident occurred up until the lower court dismissed his claims, Sandmann never wavered from his view that there was nothing wrong with "putting his foot down" and refusing to make way for Phillips, unlike his classmates. How, then, could the Blocking Statements have damaged Plaintiff's then-sixteen-year-old reputation to the tune of nearly $2 billion dollars (the combined amount he sought from media defendants)?

Plaintiff cannot have it both ways—deeming his own conduct unobjectionable while claiming that Phillips' version of events is somehow

defamatory. Affirmance would be required even if the Blocking Statements were

not so obviously an expression of opinion protected by the First Amendment.

## STATEMENT OF ISSUES ON APPEAL

Defendants adopt the statement of issues contained in the Joint Brief of

Appellees.

## ARGUMENT

**I.    The District Court Correctly Determined that the Blocking Statements Contained in the Gannett Publications are Constitutionally Protected Opinion.**

**A.    The Full Context of Their Publication Establishes that the Blocking Statements Are Nonactionable Opinion.**

According to both the First Amendment and Kentucky defamation law, the

"'[a]lleged defamatory statements must be construed in the context of the entire

communication.'"[3] *Biber v. Duplicator Sales & Serv., Inc.*, 155 S.W.3d 732, 738

(Ky. Ct. App. 2004) (citation omitted); *see also Yancey v. Hamilton*, 786 S.W.2d

854, 857 (Ky. 1990) (whether statement is protected opinion must be considered

"in the whole context of its publication"); *Lassiter v. Lassiter,* 456 F. Supp. 2d 876,

881 (E.D. Ky. 2006) (application of opinion privilege requires evaluation of

---

[3]    As a prominent commentator has emphasized, "what the trial court must decide in 'opinion cases' is whether a reasonable person reading the statement *in the context of the whole article* would believe it is based upon alleged facts, which, if untrue, would be defamatory." *Leibson*, 13 KENTUCKY PRACTICE (TORT LAW) § 15.2, at 449 (1995) (emphasis supplied).

context). This interpretive rule protects free speech by preventing plaintiffs from hyper-technically parsing individual words to strip privileged statements of the protection afforded by the Constitution. Sandmann acknowledges this rule, as he must. Br. at 13 ("*Milkovich* requires courts to focus . . . on the entire context in which the statement was made").

However, Sandmann nevertheless argues that the Blocking Statements should not be protected by the opinion privilege if they could be deemed "sufficiently factual." Br. at 16, 18. But that argument disregards the dispositive question: whether "a reasonable reader would understand that Phillips was simply conveying his view of the situation." Op., RE 95, PageID.3241. That question must be answered in the affirmative on this appeal, as it was below.

Statements that are relative in nature and depend largely on the speaker's viewpoint are expressions of opinion. *Riley v. Harr*, 292 F.3d 282, 290 (1st Cir. 2002). That is precisely how Gannett's reporting used the Blocking Statements. A reasonable reader understood the statement to convey Phillips's own view of his encounter with Sandmann, told by one of the participants to the controversy. Expressing these remarks "in the first person as to what he felt at the time suggests that the statement[s] made w[ere] an opinion rather than . . . defamatory statement[s]." *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541, 554 (W.D. Ky. 2005).

Further, Sandmann ignores that Gannett's reporting was not static. As the news coverage of the Sandmann-Phillips standoff evolved, the Gannett publications made explicit what was implicit in the Blocking Statements by noting the variability and uncertainty of ascertaining the participants' intentions. *See, e.g.*, Enquirer's Second Online Article, RE 32-13, PageID.446 ("Accounts of the episode vary widely and the question of each party's intent has been hotly contested."). Indeed, several of the articles disputed by the Complaint also offered Sandmann's version of events:

> "I started going that way, and that guy in the hat stood in my way and we were at an impasse," Phillips told the Washington Post. "He just blocked my way and wouldn't allow me to retreat."

> "I did not see anyone try to block his path," Sandmann said in his statement. "He locked eyes with me and approached me, coming within inches of my face.  He played his drum the entire time he was in my face. I never interacted with this protestor. I did not speak to him. I did not make any hand gestures or other aggressive moves."

RE 32-13, PageID.450.

Thus, Gannett's reporting presented two sides of the controversy, in which the Blocking Statements are "neither an assertion of fact nor a conclusion that follows incontrovertibly from asserted facts as a matter of logic. [They are] instead a subjective take that is up for debate." *Croce v. Sanders*, 843 Fed. App'x 710, 716 (6th Cir. 2021). "[R]easonable readers would see there is ample room for a different interpretation" of what occurred between Sandmann and Phillips during

an unusual and dynamic encounter that took place in a charged environment. *Id*;

*see also Cromity v. Meiners*, 494 S.W.3d 499, 504 (Ky. Ct. App. 2015)

(defamation defendant's on-air statement that he was not speeding when pulled

over by plaintiff-police officer not actionable because not provable as false; "The

only evidence available is [defendant's] word against [plaintiff]'s."). That makes it

protected opinion.

### B.    Speculation Over State of Mind is Intrinsically Unsuitable as a Foundation For Libel.

Sandmann asserts that statements referring to "another's implicit intentions"

are "of no significance" to the opinion privilege analysis. Br. at 23. Sandmann is

wrong. As the district court correctly summarized, "[i]t has long been established

that someone's state of mind is not capable of being proven true or false." Op., RE

95, PageID.3242. And as the Seventh Circuit has explained, a person's internal

thoughts "can never be known for sure (even by [that person]) and anyone is

entitled to speculate on a person's motives from the known facts of his behavior."

*Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993).[4]

---

[4]    *See also, e.g., Yohe v. Nugent*, 321 F.3d 35, 41 (1st Cir. 2003) (speculation about what motivated an attempted suicide not actionable); *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1303-04 (8th Cir. 1986) (noting that the "singling out of . . . motive is a subtle and slippery enterprise," and finding that statement's unarticulated "implication" that a criminal prosecution was motivated by revenge was too imprecise and unverifiable to be anything other than opinion).

Despite this clear law, Sandmann claims that the Blocking Statements are defamatory *because* they portrayed him as "***intentionally*** blocking the progress of a peaceful Native American protestor." Br. at 5 (emphasis supplied). That has matters precisely backwards; an inherently subjective evaluation of intent is not readily verifiable and therefore cannot give rise to a libel claim. As the district court correctly concluded: "Phillips had no way of knowing what Sandmann was thinking or intended when he made the challenged statements." Op., RE 95, PageID.3242. As a result, any purported attribution of intentionality to Sandmann by the Blocking Statements is not actionable in defamation. *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1432 (8th Cir. 1989) ("Assertions whose elements are unverifiable, including statements regarding motive, are 'intrinsically unsuited' to serve as a basis for libel." (citation omitted)), *cert. denied*, 493 U.S. 1036 (1990)

For the same reason, Sandmann's claim that the Blocking Statements *implied* "racism, intolerance, intimidation, and insensitivity" (Br. at 6)—which requires the presumption of extensive extraneous information nowhere stated in their text and nowhere published by Gannett—fails to salvage his defamation claim. Rather, it only reinforces that the Blocking Statements are the stuff of opinion. Contrary to Sandmann's allegation, courts have repeatedly found statements characterizing people as, or implying that people are, "racist" are

nonactionable opinion because they are inherently subjective evaluations that cannot be proved true or false.[5] So too here.

## II. Plaintiff's Law of the Case Argument is Irrelevant to his Claims Against Gannett.

Plaintiff argues that the district court was prohibited from considering whether the Blocking Statements constituted protected opinion because "[o]n multiple prior occasions, the parties briefed and the District Court ruled on the 'opinion' defense." Br. 34. For reasons explained in the Appellees' Joint Brief, that argument is wrong as a matter of law. Indeed, even this Court's holdings on an appeal of a motion to dismiss ruling is not the "law of the case" for a subsequent ruling at the summary judgment stage. *See McKenzie v. Bellsouth Telecom.*, 219 F.3d 508, 513 (6th Cir. 2000).

But that argument is *particularly* incorrect as applied to Gannett, which never raised an opinion defense prior to summary judgment. "The law-of-the-case doctrine 'comes into play only with respect to issues previously determined.'"

---

[5]    *See, e.g., Torain v. Liu*, 279 Fed. App'x 46, 47 (2d Cir. 2008) (statement that plaintiff was a "sick racist pedophile" could not reasonably be understood as an assertion of objective fact); *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) ("In daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face" and thus falls "comfortably within the immunity for name-calling."); *McCafferty v. Newsweek Media Group, Ltd.*, 2019 WL 1078355, at *4 (E.D. Pa. Mar. 7, 2019), *aff'd*, 955 F.3d 352 (3d Cir. 2020) (featuring plaintiff in a report titled "Trump's Mini-Mes," which plaintiff alleged implied that he "supported or defended racism," was non-actionable opinion).

*Kalama v. Matson Navigation Co.*, 875 F.3d 297, 308 (6th Cir. 2017). Here, Gannett did not assert an opinion (or defamatory meaning) argument in its Motion to Dismiss (RE 36), and the trial court's ruling on that Motion (RE 39) did not address those issues. Thus, there is no basis for applying the "law of the case" doctrine to Gannett.

## III.    The Blocking Statements are Not Defamatory.

In the alternative, affirmance is required because Plaintiff failed to meet his burden of establishing that the statements were "false and defamatory." *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014). Indeed, Plaintiff's own testimony and public statements confirm that, viewed in the context of the incident at the Lincoln Memorial, there was nothing defamatory about Phillips' statement that Sandmann blocked him from moving through the crowd, thereby preventing him from exiting the situation.

To determine if a statement conveys a defamatory meaning, its words "must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 884 (Ky. 1981); *see also Croce v. N.Y. Times Co.*, 930 F.3d 787, 792-93 (6th Cir. 2019). The evidence before the district court made clear that a reasonable person would not conclude the Blocking Statements were defamatory. There is no better evidence for this than

Plaintiff's own consistently expressed views, speaking for himself rather than through the filter of his counsel and public relations team.

As explained in Appellees' Joint Brief, Plaintiff repeatedly stated during his deposition that he did not see anything wrong with standing up to Phillips' purported "aggression" in order to show that he was not going to be intimidated. *See, e.g.*, RE 66-10, PageID.1434-1436, Dep. Tr. of Nicholas Sandmann ("S.D.") 174:25-175:14 ("And to me, that was standing up for the school, because I wasn't going to move."), 176:15-20 ("Someone's just got to stand here, be still and put their foot down."). He also stood firm in his view that there was nothing disrespectful about putting his foot down and planting himself in Phillips' way. *See, e.g.,* RE 66-10, PageID.1447-1448, S.D. 193:25-194:20 ("[I]f they want to intimidate me, which I would assume then means they exhibit a dislike of me, I can't find any compelling reason as to why I would equally return the respect to clear a place for them to move.").

Plaintiff expressed a similar sentiment when questioned about one of his schoolmates, who shouted "you can't move him" in a sing-song voice at Phillips after he found himself face to face with Sandmann. When asked whether that statement was disrespectful to Phillips, Plaintiff responded "No" because "that's a very neutral, truthful statement. Technically, he is not allowed to move me or put his hands on me, if you are looking at this legally. So I don't—I don't see that as

how you could take that as disrespectful to Mr. Phillips." RE 67-1, PageID.1609-1610, S.D. 320:18-321:3.

Sandmann's deposition testimony—that "standing his ground" in front of an elderly Native American man was not disrespectful, and there was nothing wrong with his classmates telling Phillips he could not move Sandmann out of his way—was consistent with the unfiltered perspective Plaintiff offered in real time as the social media controversy developed. On the overnight bus ride home from Washington, D.C. to Covington, Kentucky, Plaintiff learned that his interaction with Phillips had gone viral. *See* RE 67-, PageID.1612, S.D. 393:6-8. By 6:00 a.m., he had reached out to two conservative activists he believed would be sympathetic to his plight: Charlie Kirk, the co-founder of Turning Point USA ("TPUSA") and Kyle Kashuv, the director of high school outreach for TPUSA. He sent nearly identical Twitter messages to both:



RE 66-15, PageID.1569



RE 66-14, PageID.1567

These messages make clear that Sandmann was proud of the fact that he, alone among CovCath students, stood up to Phillips: "unlike others at my school I didn't step out of the way because he was trying to intimidate us." *Id.* Kashuv responded two days later, asking what he could do to help and offering to talk by phone.  RE

66-14, PageID.1567. Sandmann wrote back within the hour, stating that he "need[ed] to make sure my pr person will let me speak." *Id.*

As time went on, Sandmann embraced his role as an "immovable object" on the steps. Indeed, in the days that followed the incident, he wanted to authorize the commercial use of his image on "Stand Your Ground" merchandise. On February 1, 2019, Sandmann received a text message from a former CovCath student stating: "Yo, Nick, it's Isaac Boldery. Pretty sure you know me but if not, I graduated CCH last year. I'm texting you to get permission from your parents to print a shirt that has your face on it." RE 67-1, PageID.1614. At Sandmann's request, Boldery provided a picture of what the shirt would look like; it featured a back-and-white image of Plaintiff's face, with a prominent red hat, over the phrase "STAND YOUR GROUND":



*Id.*; *see also* RE 67-1, PageID.1620 (larger image of t-shirt). Sandmann indicated that he would ask his parents and respond. RE 67-1, PageID.1615.

On February 3, Boldery followed up to see if Sandmann had any update on the request. RE 67-1, PageID.1616. Sandmann apologized for not responding because he had been busy with other activities. *Id.* On February 5, Boldery followed up again: "Hey man, any news on approval for the shirts? I know you've been busy so I just wanted to give ya some time." RE 67-1, PageID.1617.  Within minutes, Sandmann responded: "Yeah, I've been told we need to ask the lawyers on their opinion.  I wish I could just give you the go ahead!" *Id.* Later, he added: "I want to just say yes but apparently I can't." *Id.* On February 10, Boldery asked for a fourth time: "Hey were you able to ask the lawyers?" RE 67-1, PageID.1618. Sandmann responded: "Yeah, unfortunately I don't think it's a good idea. Other people printed them but they didn't ask us so idk if stuff will happen to them." *Id.* Boldery responded "Alright man thanks," and Sandmann again apologized: "Sorry :/." *Id.*

Sandmann's embrace of his stand-your-ground hero status was not short-lived. In November 2019—a full 10 months after the incident in question—Sandmann tweeted out "The video is really good, I liked this one better:"



The promoted video, available at

https://www.youtube.com/watch?v=twrW4uYlN7M, is an artistically stylized two-

minute clip showing Sandmann standing in front of Phillips, with a smile on his

face, while the chorus of Tom Petty's famous anthem *I Won't Back Down* plays in

the background. Sandmann testified that he liked this video because it represented

his desire to stand up to Phillips on behalf of his school:

> Q:  Did you feel like the song expressed something that spoke to
> you?
>
> A:  Yes, as I testified earlier about how I wanted to stand up for the
> school.
>
> Q:  Okay. So it's the stand—you feel like you stood your ground?
>
> A:  Yes.

RE 67-1, PageID.1607, S.D. 288:23-289:4. The tweet has since been deleted from

Sandmann's Twitter feed, although he disavows any memory of deleting it. *Id.*,

PageID.1608, S.D. 289:13.

Given Sandmann's repeated defense of "standing his ground" in front of Phillips, Sandmann could never have shown that the "ordinary, natural meaning" of the Blocking Statements within the "four corners" of *USA Today*'s articles, "stripped of all innuendos and explanations," *Roche v. Home Depot U.S.A.*, 197 Fed. App'x 395, 398 (6th Cir. 2006), could "induce an evil opinion of him in the minds of right-thinking people." *Digest Publ'g Co. v. Perry Publ'g Co.*, 284 S.W.2d 832, 834 (Ky. Ct. App. 1955). Nor could he show that the Blocking Statements or Gannett's coverage of the incident "lower[ed Sandmann] in the estimation of the community or . . . deter[ed] third persons from associating or dealing with him." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004). On the contrary, Sandmann was celebrated as a hero in many quarters for standing his ground. As a result of this incident, he was invited to speak during prime time at the 2020 Republican National Convention (RE 67-1, PageID.1611, S.D. 359:21-23), secured a coveted internship with Senate Majority Leader Mitch McConnell (*id.*, 20:3-4, 13-23), and even published an opinion piece in the British newspaper *The Daily Mail* encouraging Kyle Rittenhouse to sue the media just like Plaintiff himself did.[6] Having been granted this unusually large global megaphone

---

[6]    *See* Nicholas Sandmann, *The corrupt liberal media came for me, just like they came for Kyle Rittenhouse, and if he decides to sue I say go for it and hold the media accountable*, THE DAILY MAIL (Dec. 16, 2021, 1:48 PM), https://www.dailymail.co.uk/news/article-10208119/kyle-rittenhouse-trial-NICHOLAS-SANDMANN-media-defamation.html.

precisely because he "stood his ground" during the incident at the Lincoln

Memorial, Plaintiff cannot claim that the Blocking Statements damaged him.

## CONCLUSION

Based on the foregoing reasons, and those in Appellees' Joint Brief, this

Court should affirm the dismissal of Plaintiff's defamation claims against Gannett.

Respectfully submitted,

*s/ Michael P. Abate*
Jon L. Fleischaker
Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
(502) 540-8280
jfleischaker@kaplanjohnsonlaw.com
mabate@kaplanjohnsonlaw.com

Michael J. Grygiel
Cynthia E. Neidl
Kelly L. McNamee
Candra M. Connelly
GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
(518) 689-1400
grygielm@gtlaw.com
neidlc@gtlaw.com
mcnameek@gtlaw.com
connellyc@gtlaw.com

*Counsel for Appellees Gannett Co., Inc. and Gannett Satellite Information Network*

Dated:        December 23, 2022

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation set in the Court's October 12, 2022 order regarding consolidation and briefing schedule, because it contains 3,498 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: December 23, 2022                */s/ Michael P. Abate*
                                        Counsel for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, I filed the foregoing with the Court and served it upon opposing counsel by submitting it through the Court's CM/ECF system. All counsel of record are registered ECF users.

_s/ Michael P. Abate_
Counsel for Appellees